# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **POWERMAT TECHNOLOGIES, LTD.,** | |
| **Plaintiff,** | **Case No. 1:19-cv-878** |
| **v.** | |
| **BELKIN INTERNATIONAL INC.,** | **JURY TRIAL** |
| **Defendant.** | |

**PLAINTIFF POWERMAT TECHNOLOGIES, LTD.'S ORIGINAL COMPLAINT**

## I.    INTRODUCTION

Plaintiff Powermat Technologies, Ltd. ("**Powermat**") is a leading innovator of wireless charging technology, which lets mobile-device users charge their devices—like smartphones and tablets—without plugging them in. In 2007, Powermat started applying to patent its inventions in the United States and other jurisdictions. The United States Patent and Trademark Office alone has since granted Powermat more than 60 United States patents claiming wide-ranging aspects of wireless charging technology. Many of these patents are necessary to making products that comply with technical standards that standards-development organizations ("**SDOs**") have published to ensure interoperability among devices and accessories.

In 2015, Powermat licensed some of its patents to defendant Belkin International Inc. ("**Belkin**"). The parties' License Agreement ("**Agreement**") gives Belkin a license to Powermat's patents that are necessary to complying with, or otherwise making products that implement, certain technical standards for wireless charging. In return, Belkin agreed to, among other things, pay Powermat royalties on all product sales compliant with these standards.

Belkin has breached and repudiated its plain and unambiguous duties under the Agreement. To start, Belkin has vastly underpaid royalties owed to Powermat, claiming that it owes royalties on only a fraction of the products plainly specified in the Agreement. Belkin has since stopped paying royalties altogether while continuing to sell covered products. Indeed, with no contractual or legal basis whatsoever, Belkin claims to have unilaterally "terminated" the Agreement. Belkin has also failed to comply with the Agreement's reporting and auditing provisions, among other things.

Powermat has attempted to resolve this dispute for more than a year, but Belkin has only persisted in refusing to honor the Agreement's plain terms. Powermat thus brings this lawsuit to enforce the Agreement against Belkin.

## II.    THE PARTIES

1.  Powermat is an Israeli corporation having its principal place of business in Petah Tikva, Israel.

2.  Belkin is a Delaware corporation having its principal place of business at 12045 E. Waterfront Dr., Playa Vista, CA 90094.

## III.    JURISDICTION AND VENUE

3.  This Court has original jurisdiction of this matter under 28 U.S.C § 1332 as it is between a foreign corporation and a United States corporation, and the amount in controversy exceeds the sum or value of $75,000.

4.  The Court has personal jurisdiction over the parties as they irrevocably consented to the jurisdiction of this Court for any dispute arising under or relating to the Agreement.

5.  The parties' consent to the jurisdiction of this Court also constitutes consent to venue here.

## IV.    FACTUAL BACKGROUND

### A.    Powermat Pioneers Wireless Charging

6.  Powermat was established in 2006 and is a pioneer in developing technology for wireless charging.

7.  Wireless charging is an increasingly popular technology that allows devices to be charged without being plugged into a power cord.

8.  Wireless charging works by having a transmitter that wirelessly sends power to a receiver, commonly through inductive charging.

9.  Powermat was the first to provide this technology to the consumer and automotive markets.

10. Powermat also created a publicly accessible network of chargers in places like coffee shops.

11. Acknowledging the popularity and utility of wireless charging, support for wireless charging is increasingly built directly into devices such as smartphones and smartwatches. Samsung

first offered wireless charging in 2011 and included wireless charging as a basic feature on its "S" line of phones (e.g., S6, S7, S8) beginning in early 2015. Apple announced that wireless charging would be included as a basic feature on its iPhones in late 2017.

12. To ensure interoperability among devices and accessories produced by different companies, participants in the markets for technologies like wireless charging often seek to "standardize" technical specifications for these technologies. Technical standards are published by SDOs, which, in general, are independent, non-profit organizations of industry participants.

13. Industry SDOs have published certain standards for wireless charging that have become common in the industry.

14. These wireless charging standards incorporate various industry participants' patented technologies. When a standard cannot be implemented without practicing a particular patent, that patent is deemed "essential" to that standard.

15. Powermat holds a significant global portfolio of patents essential to the common wireless charging standards.

### B.    Belkin Enters the Wireless Charging Market

16. Belkin is a manufacturer of accessories for electronic devices.

17. In 2015, following increased use of wireless charging in cell phones, Belkin approached Powermat about licensing its wireless charging patents.

18. In 2015, Belkin began to sell wireless chargers.

### C.    The Agreement

19. On November 3, 2015, Powermat and Belkin entered into their Agreement.

20. In the Agreement, Powermat agreed to grant Belkin a patent license under terms and conditions specified in the Agreement permitting Belkin to make and sell products that implement certain wireless charging standards.

21. In exchange, Belkin agreed to pay specified royalties on products that implement the specified wireless charging standards and also agreed to terms and conditions specified in the Agreement concerning reporting and auditing, among other things.

22. Belkin and Powermat each had the authority and legal capacity to enter into the Agreement.

23. The Agreement was signed by representatives of Powermat and Belkin.

24. Belkin's Director of Product Management signed the Agreement on Belkin's behalf.

25. Belkin has issued a press release that describes the same individual as a Director or Senior Director of Project Management at least once each year in 2015, 2016, 2017, and 2018.

26. In connection with the Agreement, Powermat communicated with Belkin's Director of Project Management through her Belkin.com email address.

27. The Agreement is a valid and binding contract that has not been validly revoked or otherwise terminated.

###     D.     Powermat Performed and Belkin Performed In Part Under the Agreement

28. In early 2015, Belkin began offering products compliant with certain wireless charging standards.

29. Belkin received a license from Powermat under the terms and conditions specified in the Agreement.

30. From 2015 through 2017, Belkin reported a portion of its sales of products covered by the license and paid royalties on those products.

31. From 2015 to the present, Belkin has sold a range of wireless chargers. These wireless chargers have complied with the common wireless charging standards covered by the Agreement.

32. Belkin has advertised that it was the fastest growing seller of wireless charging accessories between 2015 and 2017.

33. Belkin currently advertises that it is the number one third-party maker of wireless charging accessories.

34. Belkin has sold these chargers for retail prices ranging from approximately $30 to approximately $100.

### E. Belkin Underpaid Royalties Under the Agreement

35. In 2017, Powermat discovered that Belkin had not paid all the royalties it had agreed to under the Agreement, including by failing to pay royalties on certain products covered by the Agreement.

36. When Powermat brought these issues to Belkin's attention in March 2017, Belkin responded by taking the position that it did not have to pay royalties on products that implement one of the common wireless charging standards.

37. Powermat and Belkin continued in a back-and-forth through June 2017, but no resolution was reached, and Powermat was directed to Belkin's legal counsel.

38. After further correspondence between Powermat and Belkin that failed to resolve the parties' dispute, on November 28, 2017, Belkin sent a letter that purported to unilaterally terminate the Agreement.

39. Belkin's termination of the Agreement was not effective.

40. In purportedly terminating the Agreement, Belkin stated that it would only pay amounts due under the Agreement for certain prior sales and would not pay royalties on products that implement one of the common wireless charging standards.

41. Belkin has not paid any royalties to Powermat in 2018.

### F. Belkin Refused to Comply with the Agreement's Auditing Provision

42. On December 28, 2018, Powermat informed Belkin that it would be invoking the Agreement's auditing provision.

43. On January 14, 2019, Belkin refused Powermat's request to honor Powermat's auditing rights as specified in the agreement.

### G.    Money Damages Do Not Adequately Protect Powermat's Interest in its Reporting and Auditing Rights Specified in the Agreement

44. Belkin's reporting obligations and Powermat's auditing rights are specifically called for under the Agreement.

45. Money damages are not adequate to protect Powermat's expectation interest in the reporting and auditing provisions.

46. Belkin's performance under the reporting and auditing provisions is unique for Powermat and has no established market value.

47. An attempt to value Belkin's failure to perform under these provisions with certainty would be exceedingly difficult if not impossible.

48. Powermat would not be able to procure a suitable substitute performance for these provisions with a damages award.

### CAUSE OF ACTION & RELIEF

### V.    COUNT I – BREACH OF CONTRACT

49. Powermat repeats and realleges the allegations contained in the preceding paragraphs.

50. Powermat and Belkin entered into a valid contract on November 3, 2015, when they entered into the Agreement. The Agreement is supported by valid consideration as described herein.

51. Powermat performed under the Agreement by providing Belkin a patent license on the terms and conditions specified in the Agreement, among other things.

52. Belkin partially performed under the Agreement by providing Powermat with some of the royalties owed under the Agreement, among other things.

53. Any conditions precedent to Belkin's obligations under the Agreement, or Powermat's right to enforce those obligations, have been satisfied or have been waived, forfeited, or otherwise excused.

54. Belkin breached the agreement by, at least, failing to pay or underpaying royalties specified in the Agreement, failing to provide the reports specified in the Agreement, and refusing to comply with the Agreement's auditing provision.

55. Belkin's conduct as described herein has also breached the implied covenant of good faith and fair dealing under the Agreement.

56. Powermat suffered damages from Belkin's breaches, including the nonpayment of royalties specified in the Agreement.

## VI.    JURY DEMAND

57. Powermat hereby requests a trial by jury under Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## VII.   PRAYER FOR RELIEF

58. Powermat requests the Court enter judgment:

   A. Finding that Belkin has breached the Agreement by failing to comply with, at least, the Agreement's royalty, reporting, and auditing provisions.

   B. Finding that Belkin has breached the Agreement's implied covenant of good faith and fair dealing.

   C. Requiring Belkin, for the periods for which Belkin has not complied with the Agreement's reporting provision, to perform under such provision.

   D. Requiring Belkin to perform under the Agreement's auditing provision.

   E. Requiring Belkin to provide an accounting.

   F. Awarding Powermat damages for Belkin's underpayment/nonpayment of royalties specified in the Agreement.

   G. Finding that Belkin's purported termination of the agreement in November 2017 was not effective.

H.  Awarding Powermat interest on any sum awarded for breach of contract.

I.  Awarding Powermat its costs and reasonable attorney's fees.

J.  Awarding Powermat all such other and further relief as the Court deems just and proper under the circumstances.

January 29, 2019                                    Respectfully submitted,


                                                    */s/ Kenneth H. Frenchman*
                                                    Kenneth H. Frenchman
                                                    NY State Bar No. 3028115
                                                    kfrenchman@mckoolsmith.com
                                                    **McKool Smith, PC**
                                                    One Bryant Park, 47th Floor
                                                    New York, NY 10036
                                                    T: 212.402.9400
                                                    F: 212.402.9444

                                                    Mike McKool (*PHV* forthcoming)
                                                    TX State Bar No. 13732100
                                                    mmckool@mckoolsmith.com
                                                    Nicholas Mathews (*PHV* forthcoming)
                                                    TX State Bar No. 24085457
                                                    nmathews@mckoolsmith.com
                                                    Rudy Fink (*PHV* forthcoming)
                                                    TX State Bar No. 24082997
                                                    rfink@mckoolsmith.com
                                                    **McKool Smith, PC**
                                                    300 Crescent Court, Suite 1500
                                                    Dallas, TX 75201
                                                    T: 214.978.4000
                                                    F: 214.978.4044

                                                    Charles E. Fowler, Jr. (*PHV* forthcoming)
                                                    TX State Bar No. 24083014
                                                    cfowler@mckoolsmith.com
                                                    **McKool Smith, PC**
                                                    300 W. 6th Street, Suite 1700
                                                    Austin, TX 78701
                                                    T: 512.692.8700
                                                    F: 512.692.8744

                                                    **ATTORNEYS FOR PLAINTIFF**
                                                    **POWERMAT TECHNOLOGIES, LTD.**