IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **POWERMAT TECHNOLOGIES, LTD.,** | |
| Plaintiff, | Case No. 1:19-cv-878-VSB |
| v. | |
| **BELKIN INTERNATIONAL INC.,** | JURY TRIAL |
| Defendant. | |

**PLAINTIFF POWERMAT'S TECHNOLOGIES, LTD.'S MEMORANDUM OF LAW SUPPORTING ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

LEGAL STANDARD .....................................................................................................................3

ARGUMENT ..................................................................................................................................4

I.     The License Agreement unambiguously includes all Qi-compliant receivers and transmitters in its definition of "Licensed Products," thus requiring Belkin to pay royalties on them. .................................................................................................................5

     A.     "Licensed Products" unambiguously includes all Qi-compliant receivers and transmitters, whether or not they are also PMA-compliant. ..............................5

     B.     The definition of "Licensed Chipsets" does not conflict with the definitions of "Licensed Receiver" and "Licensed Transmitter." .............................9

     C.     The Court cannot consider parol evidence to vary the License Agreement's plain terms. ....................................................................................................10

II.    Belkin cannot escape the License Agreement's plain terms by claiming that they resulted from a "mutual mistake" requiring "reformation." ...............................................11

CONCLUSION ............................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

*120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*,
   No. 08 CIV. 6491 (LAP), 2013 WL 12331487 (S.D.N.Y. Sept. 25, 2013) ................................ 4

*Adelaar v. Sprout Foods, Inc.*,
   No. 12 CIV. 3054 FM, 2013 WL 6044008 (S.D.N.Y. Nov. 15, 2013) ................................... 12

*AMEX Assurance Co. v. Caripides*,
   316 F.3d 154 (2d Cir. 2003) ................................................................................................... 11

*Bader v. Wells Fargo Home Mortg. Inc.*,
   773 F. Supp. 2d 397 (S.D.N.Y. 2011) ....................................................................................... 4

*Caisse Nationale De Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*,
   No. 92 CIV. 1689 (KTD), 1992 WL 245500 (S.D.N.Y. Sept. 17, 1992) ................................ 15

*Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*,
   773 F.3d 110 (2d Cir. 2014) ................................................................................................... 10

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*,
   797 F. Supp. 2d 254 (S.D.N.Y. 2011) ..................................................................................... 13

*Collins v. Harrison-Bode*,
   303 F.3d 429 (2d Cir. 2002) ................................................................................................... 11

*Cue Fashions, Inc. v. LJS Distribution, Inc.*,
   807 F. Supp. 334 (S.D.N.Y. 1992) ............................................................................................ 4

*Eastman Kodak Co. v. Altek Corp.*,
   936 F. Supp. 2d 342 (S.D.N.Y. 2013) ..................................................................................... 10

*In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*,
   92 F. Supp. 3d 163 (S.D.N.Y. 2015) ............................................................................. 3, 4, 15

*In re Johns-Manville Corp.*,
   759 F.3d 206 (2d Cir. 2014) ..................................................................................................... 6

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009) ............................................................................................ 5, 6, 7

*JPMorgan Chase Bank, N.A. v. Winget*,
   602 F. App'x 246 (6th Cir. 2015) ........................................................................................... 13

*K.G. Cornwall, LLC v. Beazer Homes Corp.*,
   No. 07 Civ. 2881(CLB), 2008 WL 563466 (S.D.N.Y. Feb. 28, 2008) .................................... 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)..................................................................................................4

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
    639 F.3d 63 (2d Cir. 2011)..................................................................................................10

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    784 F.3d 78 (2d Cir. 2015)................................................................................................6, 7

*McEachin v. Northland Grp., Inc.*,
    No. 12 CIV. 3283 CM, 2012 WL 6582423 (S.D.N.Y. Dec. 14, 2012) .............................13, 14

*Palmer/Kane LLC v. Rosen Book Works LLC*,
    204 F. Supp. 3d 565 (S.D.N.Y. 2016).................................................................................11

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
    51 F. Supp. 3d 379 (S.D.N.Y. 2014).......................................................................11, 12, 14

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*,
    769 F.3d 807 (2d Cir. 2014)..............................................................................................5, 10

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
    842 F. Supp. 2d 502 (S.D.N.Y. 2012)...................................................................................3

*VoiceAge Corp. v. RealNetworks, Inc.*,
    926 F. Supp. 2d 524 (S.D.N.Y. 2013)........................................................................3, 12, 13

*Xerox Corp. v. RP Digital Servs., Inc.*,
    232 F. Supp. 3d 321 (W.D.N.Y. 2017).................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(c) .........................................................................................................................3

Fed. R. Civ. P. 9(b) ........................................................................................................................11

## INTRODUCTION

This is a prime case for early resolution of liability on the pleadings. It presents a simple contract dispute. Plaintiff Powermat Technologies, Ltd. (Powermat) granted defendant Belkin International, Inc. (Belkin) a patent license. In exchange, Belkin agreed to pay Powermat royalties on certain product sales. The parties documented their deal in an integrated written contract. None of this is disputed.

The dispute involves which products Belkin must pay royalties on. The contract's plain terms resolve this dispute. The contract requires Belkin to pay royalties on all "Licensed Products." "Licensed Products," in turn, include wireless-charging receivers and transmitters that implement either, or both, of two wireless-charging industry standards: the "PMA Specification" and the "Qi Specification." Enforcing the contract as written, the Court should enter judgment holding Belkin liable for breach because it (admittedly) refused to pay royalties on Licensed Products that implement the Qi Specification but not the PMA Specification.

Belkin will insist that the Court cannot decide liability before a protracted discovery period. *See* Dkt. No. 32 at 3–4. Belkin casts this case as "complex" and "fact-intensive." *Id.* at 3. It envisions wide-ranging third-party discovery from the world's largest electronics makers, among others. *Id.* at 4. It wants "at least 10 depositions." *Id.* It will try to justify all this based mainly on its claim that the parties' written contract does not reflect their intent but must be "reformed" because of a "mutual mistake."

But a mere incantation of "mutual mistake" does not displace the longstanding bar on parol evidence in enforcing an unambiguous contract. Belkin's mutual-mistake allegation is not a plausible defense but a plea for unneeded complication, delay, and expense. Although courts sometimes rely on parol evidence to reform even unambiguous contracts, Belkin has alleged no plausible grounds for reformation here. First, reformation for mutual mistake requires a prior oral

1

agreement that the parties wrote down incorrectly. But here, the parties' contract expressly supersedes prior oral agreements. Under these circumstances, this Court has repeatedly barred parol evidence of a prior oral agreement to show mutual mistake. Second, and in any event, the pleaded facts simply do not support a plausible inference that these sophisticated and counseled parties failed so badly to capture their real agreement in their detailed written contract.

## BACKGROUND

This case relates to wireless-charging technology, which lets users charge electronic devices (like phones and tablets) without plugging them in. Dkt. No. 1 ¶ 7; Dkt. No. 28 ¶ 7. Belkin started selling wireless-charging products in 2015. Dkt. No. 1 ¶¶ 18, 28; Dkt. No. 28 ¶¶ 18, 28. It now calls itself the number-one third-party maker of those products. Dkt. No. 1 ¶ 33; Dkt. No. 28 ¶ 33.

Industry organizations have published technical standards—or "specifications"—for wireless-charging products. Dkt. No. 1 ¶ 12; Dkt. No. 28 ¶ 12. The two wireless-charging specifications relevant here are the PMA Specification and the Qi Specification. The PMA Specification was published by the Power Matters Alliance, or "PMA," a nonprofit industry group. *See* Ex. 1 at 1st "whereas" clause & "Exhibit A" ¶ 12. Another industry group, the Wireless Power Consortium or "WPC," published the Qi Specification. *See id.* at "Exhibit A" ¶¶ 17–18.

In November 2015, Powermat and Belkin entered into a "License Agreement." Dkt. No. 1 ¶ 19; Dkt. No. 28 ¶ 19; *see generally* Ex. 1. The License Agreement is an integrated written contract. *Id.* §§ 12.3, 13.5; Dkt. No. 28 ¶¶ 20–21, 29, 44, 50 (referring "the Court to the License Agreement for a full and complete statement of its terms"). The License Agreement recites that Belkin "is in the business of making products that implement the PMA Specification … and/or Qi Specification." *Id.* at 2d "whereas" clause. It also recites that Powermat "has certain essential patents claiming apparatus [sic] and methods necessary for compliance with the PMA Specifica-

tion and/or Qi Specification." *Id.* at 3d "whereas" clause. Lastly, it recites that Belkin wished to obtain, and Powermat wished to grant Belkin, "a license under such patents." *Id.* at 4th "whereas" clause.

In the License Agreement, Powermat granted Belkin a five-year patent license. *Id.* §§ 2.1, 10.1. In exchange, the License Agreement requires Belkin to pay Powermat a running royalty on all wireless-charging receivers and transmitters intended to comply with the PMA Specification, the Qi Specification, or both. *Id.* § 5.1 & "Exhibit A" ¶¶ 6–8; *see infra*, Argument Part I.A. Yet Belkin refused to pay royalties on Qi-compliant products that are not also PMA-compliant. *See, e.g.*, Dkt. No. 28 ¶ 63; Dkt. No. 32 at 3–4. Powermat thus sues to recover unpaid royalties from Belkin on Qi-compliant wireless-charging devices. *See generally* Dkt. No. 1.

## LEGAL STANDARD

"Motions for judgment on the pleadings are an underutilized tool for litigants whose claims are amenable to immediate resolution." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 525 (S.D.N.Y. 2013). Federal Rule of Civil Procedure 12(c) lets a party seek judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. "Judgment on the pleadings is appropriate where material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Id.* at 529 (quotation marks omitted). It is "particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties." *Id.*

In deciding this motion, the Court should accept all Belkin's *well-pleaded* factual allegations and draw all *reasonable* inferences in Belkin's favor. *See Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 509 (S.D.N.Y. 2012). But it need not accept "legal conclusions, deductions, or opinions couched as factual allegations." *In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015) (cleaned up).

3

Rather, to survive this motion, Belkin's claims and defenses must plead enough facts to show a *plausible* entitlement to relief. *See id*. Assessing plausibility is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Belkin's factual allegations cannot support relief unless they "permit the court to infer more than a mere possibility." *See id.* (quotation marks omitted).

"On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation marks omitted). The complaint includes "materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to [it]." *Id.* (quotation marks omitted). Powermat's complaint is thus "deemed to incorporate the [License Agreement] by reference because [that] contract is integral to [Powermat's] claim." *See Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 407 (S.D.N.Y. 2011); *accord Cue Fashions, Inc. v. LJS Distribution, Inc.*, 807 F. Supp. 334, 335–36 (S.D.N.Y. 1992); *120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*, No. 08 CIV. 6491 (LAP), 2013 WL 12331487, at *5 (S.D.N.Y. Sept. 25, 2013).

## ARGUMENT

This motion addresses two questions. The first is a typical contract-interpretation question. The Court should hold that the License Agreement is unambiguous and thus consider only that document's four corners. From those four corners, the Court should hold that the License Agreement requires Belkin to pay royalties on all Qi-compliant receivers and transmitters, whether or not they are also PMA-compliant. The License Agreement's plain terms allow no other interpretation.

4

The second question is whether Belkin's pleading supports a plausible inference of "mutual mistake," thus letting the Court rewrite the License Agreement's plain terms. Given the potential for abuse, New York courts find mutual mistake only when the proponent has clear and convincing evidence that the parties reached a specific oral agreement but wrote it down incorrectly. And a party like Belkin cannot use parol evidence to show the oral agreement when, as here, the contract expressly disclaims prior oral agreements. But even if the Court considers Belkin's allegations relying on purported parol evidence, it is implausible that a large sophisticated business like Belkin signed a detailed written contract of significant value filled with major "scrivener's errors." Belkin is therefore stuck with the deal it signed.

**I.       The License Agreement unambiguously includes all Qi-compliant receivers and transmitters in its definition of "Licensed Products," thus requiring Belkin to pay royalties on them.**

The License Agreement is unambiguous. All Qi-compliant receivers and transmitters are "Licensed Products," and Belkin owes royalties on all Licensed Products. Belkin's contrary arguments fail. Its argument about "Licensed Chipsets" relies on an illusory conflict among the definitions of "Licensed Chipsets," "Licensed Receiver," and "Licensed Transmitter." In fact, those definitions are easily reconciled. And Belkin's purported parol evidence is inadmissible to vary the License Agreement's plain terms.

**A.       "Licensed Products" unambiguously includes all Qi-compliant receivers and transmitters, whether or not they are also PMA-compliant.**

New York law governs the License Agreement. Ex. 1 § 14.3. Under New York law, "whether a written contract is ambiguous is a question of law." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009). A court must assess ambiguity based on the contract's four corners. *Id.* Extrinsic evidence cannot "create an ambiguity in a written agreement [that] is complete and clear and unambiguous upon its face." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807,

5

816 (2d Cir. 2014) (quotation marks omitted). A contract is ambiguous only if it could have more than one reasonable meaning. *JA Apparel*, 568 F.3d at 396–97. It "is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception … , and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 396 (cleaned up). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations." *Id.* (quotation marks omitted).

"If the contract is unambiguous, its meaning is likewise a question of law." *Id.* at 397. A court must enforce an unambiguous contract "according to the plain meaning of its terms." *In re Johns-Manville Corp.*, 759 F.3d 206, 214 (2d Cir. 2014). "In construing a contract, a court should read the contract as a whole and avoid any interpretation that would render a contractual provision without force and effect." *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (citation omitted).

The License Agreement unambiguously requires Belkin to pay royalties on all receivers and transmitters implementing the PMA Specification, Qi Specification, or both. To start, it requires Belkin to pay a running royalty "on all Licensed Products." Ex. 1 § 5.1. "'Licensed Products' means Licensed Chipsets, Licensed Receivers, and Licensed Transmitters." *Id.* at "Exhibit A" ¶ 6. In turn, "'Licensed Receiver' means a product that (a) incorporates an inductive charging receiver(s) (and related components) that can be charged by Licensed Transmitters, and (b) is intended to be compliant or compatible with the PMA Specification *or Qi Specification* or both the PMA Specification and Qi Specification." *Id.* ¶ 7 (emphasis added). Likewise, "'Licensed Transmitter' means a product that (a) incorporates an inductive charging transmitter (and related components) that can charge a Licensed Receiver, [and] (b) is intended to be compliant or compatible with the PMA Specification *or Qi Specification* or both the PMA Specification and Qi

6

Specification." *Id.* ¶ 8 (emphasis added). Thus, the parties could not have been clearer in including all Qi-compliant receivers and transmitters among Licensed Products. Belkin's contrary view would render "or Qi Specification" in these definitions "without force and effect." *See Luitpold*, 784 F.3d at 87.[1]

Several other terms confirm that the License Agreement covers all Qi-compliant receivers and transmitters, whether or not they are also PMA-compliant. *See JA Apparel*, 568 F.3d at 397 (noting that "[i]n interpreting an unambiguous contract, the court is to consider its particular words not in isolation but in the light of the obligation as a whole" (cleaned up)). First, the recitals suggest that the License Agreement applies the same to both PMA- and Qi-compliant products and patents. They provide (1) that Belkin makes "products that implement the PMA Specification … and/or Qi Specification"; (2) that Powermat has patents "necessary for compliance with the PMA Specification and/or Qi Specification"; and (3) that the parties wish to enter into "a license under such patents." The recitals thus portray no intent to exclude Qi-only products or patents.

Second, Belkin acknowledged in the License Agreement that Licensed Products may be Qi- but not PMA-compliant. Section 4 addresses Belkin's ability to register products for use with the "Powermat Network," a network of PMA-compliant transmitters installed in public places and operated by Powermat. Ex. 1 § 4.1 & "Exhibit A" ¶ 13. Belkin "acknowledge[d] that *Licensed Receivers that are not PMA-compliant* will not have Network Connectivity, *even if they are Qi compliant*." *Id.* § 4.2 (emphasis added). This deliberate and specific acknowledgement

---

[1] Belkin does not allege that the disputed sales included standalone "Licensed Chipsets" not contained in Licensed Receivers or Transmitters. Thus, all the disputed sales involve Licensed Receivers and Transmitters. Below we address Belkin's argument that the definition of Licensed Chipsets nevertheless creates a material "conflict."

7

would be meaningless if there were no "Licensed Receivers that are not PMA-Compliant" but "are Qi Compliant."

Third, the License Agreement grants Belkin a license "under the Licensed Patents." *Id.* § 2.1. And the "Licensed Patents" include all patents necessary to comply with *either* the PMA or Qi Specification. "'Licensed Patents' means any Patent owned and licenseable by Powermat, which includes one or more Necessary Claims." *Id.* at "Exhibit A" ¶ 5. In turn, "'Necessary Claims' means those claims of all Patents throughout the world which are necessarily infringed by an implementation of the express terms of the PMA Specification and/or the Qi Specification." *Id.* ¶ 9.

Fourth, like the recitals, other terms throughout the License Agreement place PMA and Qi technology on equal footing. For example, § 2.1 states that the license "does not extend to any functionality that is not covered by the PMA Specification or Qi Specification." Belkin's position reads "or Qi Specification" out of this section. Similarly, § 2.5 reserves to Powermat all rights not granted to Belkin, including "technologies which are not themselves expressly set forth for meeting the PMA Specification or Qi Specification" and "any portions of any product and any combination thereof the purpose or function of which is not required for compliance with the PMA Specification or Qi Specification." Belkin also "acknowledge[d] and agree[d] that the PMA Specifications and Qi Specifications are available from PMA and WPC, respectively, and not from Powermat." Ex. 1 § 3. One would have to ignore all these references to the Qi Specification to conclude that the License Agreement covers Qi-compliant products only if they are also PMA-compliant.

### B. The definition of "Licensed Chipsets" does not conflict with the definitions of "Licensed Receiver" and "Licensed Transmitter."

Belkin bases its only four-corners argument on the License Agreement's definition of "Licensed Chipsets." *See* Dkt. No. 28 ¶¶ 65, 68. A Licensed Chipset is a chipset "that implements elements of the PMA Specification or both the PMA Specification and the Qi Specification" and that, "once joined with other components, becomes a Licensed Receiver or Licensed Transmitter." Ex. 1 at "Exhibit A" ¶ 4. So Licensed Chipsets do not include chipsets that implement the Qi Specification but not the PMA Specification. According to Belkin, the definition of Licensed Chipsets thus "conflicts" with the definitions of Licensed Receiver and Transmitter and "must take precedence." Dkt. No. 28 ¶ 68.

The alleged conflict is illusory. As Belkin acknowledges, a Licensed Chipset is not a complete wireless-charging device but "a component in wireless charging devices." *Id.* ¶ 65. Licensed Receivers and Transmitters, in contrast, are complete wireless-charging products that include wireless-charging chipsets. Nothing in the License Agreement suggests that the wireless-charging chipsets in *all* Licensed Receivers and Transmitters must meet the License Agreement's definition of Licensed Chipsets. In other words, Licensed Receivers and Transmitters can include *unlicensed* chipsets. Contrary to Belkin's conclusory allegation, there is nothing inherently "nonsensical" about this result. *See id.* ¶ 68. Had the parties wished to require Licensed Chipsets in all Licensed Receivers and Transmitters, they could have easily done so. For example, rather than define Licensed Receivers and Transmitters according to *which specifications they implement*, the parties could have defined them as wireless-charging receivers and transmitters, respectively,

that *contain Licensed Chipsets*. The definition of Licensed Chipsets therefore introduces no ambiguity.[2]

### C. The Court cannot consider parol evidence to vary the License Agreement's plain terms.

Because the License Agreement is unambiguous, the Court should find the parties' intent within its four corners. *See Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014). The License Agreement "must be enforced according to the plain meaning of its terms." *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). And the Court cannot look to parol evidence "to add to or vary the writing." *Sec. Plans*, 769 F.3d at 816.

Belkin's answer describes parol evidence allegedly supporting its position, including evidence of the parties' interactions before and after they entered into the License Agreement. *See* Dkt. No. 28 ¶¶ 64, 66–67, 69. Without ambiguity, however, the Court cannot consider this evidence in interpreting the License Agreement. *See Chesapeake*, 773 F.3d at 114; *Lockheed Martin*, 639 F.3d at 69. Nor can Belkin delay a contract-interpretation ruling by insisting on discovery, as the evidence developed in discovery would be inadmissible. *See Xerox Corp. v. RP Digital Servs., Inc.*, 232 F. Supp. 3d 321, 325 (W.D.N.Y. 2017) (rejecting the argument that a dispositive motion was premature because no discovery had taken place where an unambiguous contract with a merger clause governed the dispute); *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 356 (S.D.N.Y. 2013) (refusing discovery about the parties' discussions before entering into

---

[2] While the Court need not consider it to decide this motion, the parties excluded Qi-only chipsets from Licensed Chipsets for a simple reason. The License Agreement states that if Belkin "purchases Licensed Products from a third party that is a licensee under a valid license agreement with Powermat for the Licensed Patents," then Belkin owes no royalties "in connection with such Licensed Product." Ex. 1 § 5.1. When the parties entered into the License Agreement, however, Powermat had no Qi-only licenses *to chipmakers*. So any Qi-only chipset Belkin bought from a third party was necessarily "unlicensed," and Belkin would owe a royalty when it resold that chipset as part of a receiver or transmitter. As Belkin could buy no "licensed" Qi-only chipsets (and sells only complete wireless-charging devices), the parties had no reason to include Qi-only chipsets in Licensed Products.

an unambiguous written contract). Thus, the Court should ignore Belkin's contract-interpretation arguments relying on parol evidence.

## II. Belkin cannot escape the License Agreement's plain terms by claiming that they resulted from a "mutual mistake" requiring "reformation."

Nor does Belkin allege plausible grounds to rewrite the License Agreement's plain terms. New York law allows reformation under just two circumstances: fraud and mutual mistake. *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 162 (2d Cir. 2003). Belkin pleads only mutual mistake. *See* Dkt. No. 28 ¶¶ 61, 69. It claims that the License Agreement's language requiring royalties on all Qi-compliant receivers and transmitters does not "reflect the parties' actual intent" but resulted from "a mutual mistake and/or scrivener's error." *Id.* ¶ 69.

Belkin faces a high bar. A court may reform a written contract if the parties "reached an oral agreement and, unknown to either, the signed writing does not express that agreement such as when an inadvertent secretary's error fails to reflect the actual agreement of the parties." *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 390 (S.D.N.Y. 2014) (cleaned up). But "[b]ecause the remedy of reformation presents the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different oral contract, the New York courts have sharply limited the remedy of reformation." *Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002) (cleaned up). Belkin must overcome "a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties." *See Paraco Gas*, 51 F. Supp. 3d at 391 (quotation marks omitted). Belkin must prove mutual mistake by clear and convincing evidence. *See Collins*, 303 F.3d at 435.

At the pleading stage, Belkin must also satisfy Rule 9(b)'s particularity requirement. *See Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 581 (S.D.N.Y. 2016). This

11

Court thus decides reformation on the pleadings when the allegations state no particularized facts supporting a plausible inference of mutual mistake. *See, e.g.*, *Paraco Gas*, 51 F. Supp. 3d at 391–92; *VoiceAge*, 926 F. Supp. 2d at 531. In fact, in *VoiceAge*, this Court rejected mutual mistake on the pleadings under circumstances just like these. RealNetworks refused to pay per-download royalties on its RealPlayer product under a standard-essential patent license, claiming that it never intended to pay royalties on that product despite the license's plain terms. 926 F. Supp. 2d at 527. This Court held, however, that the license unambiguously required royalties on all products that implemented the AMR-WB standard (an audio-coding standard), including RealPlayer. *Id.* at 530. It then rejected RealNetworks' "defenses of mistake, fraudulent inducement and/or misrepresentation." *Id.* at 531. It pointed to the agreement's "clear" royalty terms and its "merger integration clause." *Id.* Said the Court, "[a] mistake allowing for reformation must be a mutual mistake of fact, and not a mistake as to the legal consequences of the bargain struck." *Id.*

Belkin states no particularized facts supporting a plausible inference of mutual mistake. First off, as we discussed above, Belkin presumably will point to the definition of Licensed Chipsets to show that Licensed Products were not supposed to include Qi-only receivers and transmitters. *See supra*, Argument Part I.B. But, in short, the parties created no conflict by excluding Qi-only chipsets from "Licensed Chipsets" while including Qi-only receivers and transmitters in "Licensed Products." Thus, the definition of Licensed Chipsets shows mutual mistake no more than it shows ambiguity.

The rest of Belkin's arguments again rely on parol evidence: the parties' discussions leading up to the License Agreement, *see* Dkt. No. 28 ¶ 64, and their alleged "course of performance," *see id.* ¶¶ 66, 69, 74. Courts sometimes consider parol evidence "when a party seeks to reform a contract on the basis of mutual mistake." *Adelaar v. Sprout Foods, Inc.*, No. 12 CIV.

12

3054 FM, 2013 WL 6044008, at *4 (S.D.N.Y. Nov. 15, 2013). But a mutual-mistake claim does not open the door to parol evidence of prior oral agreements when the parties' contract *expressly disclaims* them. *See McEachin v. Northland Grp., Inc.*, No. 12 CIV. 3283 CM, 2012 WL 6582423, at *7–8 (S.D.N.Y. Dec. 14, 2012). Instead, because mutual mistake requires "a *preexisting* oral agreement," *id.* at *7 (emphasis added) (citing *Solin v. Domino*, 501 F. App'x 19, 23 (2d Cir. 2012)), it cannot coexist with a written statement of the parties' intent to supersede oral agreements. Such a statement shows the parties' understanding that the written contract is "itself the agreement of the parties, and not merely a transcription of a previous agreement." *JPMorgan Chase Bank, N.A. v. Winget*, 602 F. App'x 246, 258 (6th Cir. 2015) (applying comparable Michigan law).

This Court has repeatedly illustrated the point. In *McEachin*, the plaintiff had entered into a written release agreement stating that it superseded "any prior oral or written agreement pertaining to said subject matter." *See* 2012 WL 6582423, at *7. Claiming mutual mistake, the plaintiff sought to narrow the release's plain terms by pointing to an email her lawyer sent during the negotiations. *Id.* This Court held, however, that the integration clause barred consideration of the email. *Id.* at *7–8. Likewise, as noted above, this Court rejected mutual mistake in *VoiceAge* based in part on the contract's "merger integration clause." 926 F. Supp. 2d at 531; *see also Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 797 F. Supp. 2d 254, 275 (S.D.N.Y. 2011) (holding that "the evidence simply does not support the argument that section 6(d) was merely an 'oversight' or 'scrivener's error' requiring reformation of a fully-integrated contract containing a no-reliance clause"); *K.G. Cornwall, LLC v. Beazer Homes Corp.*, No. 07 Civ. 2881(CLB), 2008 WL 563466, at *2 (S.D.N.Y. Feb. 28, 2008) (holding that "[i]n light of the Integration Clause in

13

the Agreement," "[t]he facts do not support a finding of mutual mistake or fraud or overreaching, which would allow this Court to reform the documents").

> Here, the License Agreement states the parties' intent to supersede prior oral agreements:
>
> The Parties agree that the provisions of this Agreement are the entire agreement between them regarding the matters that this Agreement addresses. The Parties also agree that any prior agreements about those same matters, whether written or oral, are superseded by this Agreement, and previous oral agreements about those matters do not have any legally binding force.

Ex. 1 § 14.4. Belkin does not claim that this clause is itself ambiguous or a "scrivener's error." So it conclusively negates any "preexisting oral agreement" that could allow reformation. *See McEachin*, 2012 WL 6582423, at *7. It would destroy the parol-evidence rule if, by simply claiming "mutual mistake," a party like Belkin could try to enforce an alleged oral agreement despite this statement of intent.

Finally, even if Belkin could offer—and the Court could consider—the parol evidence described in Belkin's answer, that pleading still supports no plausible inference of mutual mistake. To repeat, Belkin must overcome a "heavy presumption" against mutual mistake. *See Paraco Gas*, 51 F. Supp. 3d at 391 (quotation marks omitted). Belkin focuses on the definitions of Licensed Receiver and Licensed Transmitter, suggesting that these two definitions contain a narrow scrivener's error. But as we explained above, *see supra*, Argument Part I.A, these definitions are not the only terms confirming the parties' intent to license both PMA and Qi technology. Instead, to prevail, Belkin would need clear and convincing evidence of significant and pervasive errors in the parties integrated contract.

What is more, both parties (and Belkin especially) are large sophisticated businesses. And they both consulted counsel in entering into the License Agreement—a contract of significant value. Under similar circumstances, this Court explained that "given the sophistication of the parties," the amount at stake, and the contract's plain language, one would expect "that both par-

14

ties read and understood the [contract] and that they were aware" of what it said. *See Caisse Nationale De Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, No. 92 CIV. 1689 (KTD), 1992 WL 245500, at *5 (S.D.N.Y. Sept. 17, 1992). Here too, if the parties agreed to exclude Qi-only receivers and transmitters from "Licensed Products," "then any reasonable man would insist that [agreement] be reduced to writing." *See id.* at *6. Thus, under a context-specific and common-sense assessment, *see Matter of the Trusteeships*, 92 F. Supp. 3d at 171, Belkin has not pleaded particularized facts supporting a *plausible* inference of mutual mistake.

## CONCLUSION

A ruling for Powermat on this motion would resolve the parties' main dispute. This Court should hold that the License Agreement means what it says: Belkin owes Powermat royalties on all Licensed Products, including Licensed Receivers and Licensed Transmitters that comply with the Qi Specification, whether or not they comply with the PMA Specification. As the parties do not dispute that Belkin sold, but did not pay Powermat royalties on, Qi-compliant receivers and transmitters that are not PMA-compliant, Powermat is entitled to judgment on the pleadings holding Belkin liable for breach of contract. And because Belkin's counterclaims depend on its allegation that it owes no royalties on Qi-only receivers and transmitters, Powermat is entitled to judgment on the pleadings on those claims too.

A judgment on liability would leave only issues concerning the amount of unpaid royalties. These issues involve (1) Belkin's sales volumes; (2) Belkin's purportedly "terminating" the License Agreement in November 2017 despite having no contractual termination right, *see* Dkt. No. 1 ¶¶ 38–39; Dkt. No. 28 ¶¶ 38–39, 67; and (3) Belkin's claim that the License Agreement's limitation-of-liability clause caps Powermat's recovery, *see* Dkt. No. 28 ¶ 62. Powermat expects that the Court can resolve these issues on summary judgment after limited discovery.

| | |
|---|---|
| May 23, 2019 | Respectfully submitted,<br><br> */s/ Kenneth H. Frenchman*<br>Kenneth H. Frenchman<br>NY State Bar No. 3028115<br>**MCKOOL SMITH, PC**<br>One Bryant Park, 47th Floor<br>New York, NY 10036<br>T: 212.402.9400<br>F: 212.402.9444<br><br>Mike McKool (admitted *PHV*)<br>mmckool@mckoolsmith.com<br>Nicholas Mathews (admitted *PHV*)<br>nmathews@mckoolsmith.com<br>Rudy Fink (admitted *PHV*)<br>rfink@mckoolsmith.com<br>**MCKOOL SMITH, PC**<br>300 Crescent Court, Suite 1500<br>Dallas, TX 75201<br>T: 214.978.4000<br>F: 214.978.4044<br><br>Charles E. Fowler, Jr. (admitted *PHV*)<br>cfowler@mckoolsmith.com<br>**MCKOOL SMITH, PC**<br>300 W. 6th Street, Suite 1700<br>Austin, TX 78701<br>T: 512.692.8700<br>F: 512.692.8744<br><br>**ATTORNEYS FOR PLAINTIFF POWERMAT TECHNOLOGIES, LTD.** |