```
J9DTPOWC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

POWERMAT TECHNOLOGIES, LTD.,

            Plaintiff,

       v.                                19 CV 878 (VSB)

BELKIN INTERNATIONAL INC.,

            Defendant.

------------------------------x

                                        New York, N.Y.
                                        September 13, 2019
                                        10:45 a.m.

Before:

              HON. VERNON S. BRODERICK,

                                        District Judge

                   APPEARANCES

MCKOOL SMITH
     Attorneys for Plaintiff
BY:  KENNETH FRENCHMAN

O'MELVENY & MYERS
     Attorneys for Defendant
BY:  ANDREW FRACKMAN

Case 1:19-cv-00878-VSB   Document 63   Filed 09/25/19   Page 2 of 12      2
J9DTPOWC

1              (Case called)
2              THE COURT:  Good morning.  I know there are motions
3    and cross motions pending before me, but I understand there's
4    an issue with regard to the scheduling of discovery.  But let
5    me first review for the parties the materials I have in
6    connection with today's conference.  I have the complaint, the
7    answer, the plaintiff's answer to the counterclaims and the
8    parties' joint letter filed on September 6, as well as the
9    party's proposed case management plan and scheduling order.
10             But I understand there's a disagreement about how long
11   discovery should be, and also as to the number of depositions
12   and the like, although am I correct that the parties have
13   already exchanged a certain amount of paper discovery?
14             MR. FRENCHMAN:  Yes, your Honor.
15             THE COURT:  Okay.
16             MR. FRACKMAN:  The document discovery is still
17   ongoing.  We haven't got complete production yet from Powermat.
18             THE COURT:  Okay.  As I understand the parties'
19   relative position, Powermat believes that 60 days would be
20   appropriate for discovery and Belkin has indicated that 90 days
21   are needed for discovery and have indicated that it was
22   anticipating at least ten and probably up to 20 depositions.
23             MR. FRACKMAN:  Your Honor, sorry to interrupt, I don't
24   think that's quite correct.  What we have requested is six
25   months for fact discovery followed by 90 days for expert

                              (212) 805-0300

1  discovery.

2  THE COURT: Sorry, I looked down and saw 90 days and
3  didn't realize it was related to expert discovery.

4  I guess the question is why under the standard under
5  the federal rules, why shouldn't that be applicable here? I
6  understand the legal argument from plaintiff that you believe
7  that the contract isn't ambiguous and therefore you don't need
8  to have the depositions, but in any event, why wouldn't the
9  default not fall? Why wouldn't the 120 days and limit to ten
10 depositions be something that we should just apply in this
11 case?

12 MR. FRENCHMAN: Your Honor, I think the biggest issue
13 is initial -- well, the pleadings were closed in April, initial
14 disclosures were made in April, and in terms of that 120-day
15 default rule, it really depends when we're running that from.
16 This case has been going.

17 THE COURT: Again, by my calculation, I think what
18 we're talking about is that period would end in January, so it
19 would be around January 11 or so. Maybe I'm not calculating
20 correctly.

21 MR. FRENCHMAN: Yes, I think that is about right. And
22 we do think that this case is one that could be done much
23 quicker. But I understand your point, your Honor, they're
24 asking for six months from now, and that's not sufficient.

25 THE COURT: So let me hear from defense.

1  MR. FRACKMAN:  Yes, your Honor, thank you.  So
2  Powermat has identified a dozen witnesses on their side,
3  putting aside our witnesses.  We're not even trying to depose
4  all of them, we're just saying we would like ten of the twelve.
5  THE COURT:  When you say "identify," they, in their
6  Rule 26 disclosures, say that these people may have
7  information?
8  MR. FRACKMAN:  Correct.  As I understand it, the
9  Rule 26 disclosures work -- my understand could be out of date,
10  of course -- is those are individuals with information on whom
11  they intend to rely or potentially rely.
12  THE COURT:  That's the key.  Because one of the things
13  you don't want to do is not to list somebody and then face the
14  repercussions later on.
15  But I'm sorry, go ahead.
16  MR. FRACKMAN:  So we're going to need our ten
17  depositions.  We're not asking for more.  Document discovery is
18  not even completed yet.  It took Powermat four months to make a
19  production after we served our document requests.  It's still
20  not complete.  They promised to have it completed by the end of
21  the month.  We got a whole new data set last night changing the
22  confidentiality designations for their prior production, as I
23  understand.  I haven't had a chance to open it yet, but I think
24  that's what it is.  Everything therefore was designated as
25  highly confidential.  We couldn't show much of it, maybe all of

1   it, to our client to even begin the process of planning for the
2   depositions.
3          So our view is okay, we're going to need ten
4   depositions.  Many of their witnesses, those that they
5   identified in the Rule 26 disclosures, are former Powermat
6   employees.  It's unclear whether they would be in the position
7   to produce them or whether we're going to have to subpoena
8   them.  Powermat is an Israeli company.  Many of them are out of
9   the country.  This is not just a typical, simple breach of
10  contract dispute where everyone is here in New York and we can
11  look through the depositions.
12         So frankly, we have the holidays then within that
13  Christmas period, but I just think it's unrealistic for them to
14  say 60 days.
15         THE COURT:  Well, again, I'm not operating under 60
16  days, I'm not operating under six months.  I think what makes
17  the most sense is the parties to sit down and sort of map out
18  what discovery would look like, including figuring out when you
19  can possibly schedule these folks and whether there's overlap,
20  obviously.  And you may have already done some of that.
21         MR. FRACKMAN:  We haven't.  I think that, from my
22  standpoint, the rational approach would be give us a week or
23  two -- I'm really talking to Powermat here, your Honor.
24         THE COURT:  But you should talk to me.
25         MR. FRACKMAN:  We should have a week or two after we

1   complete the document discovery, which takes us to early
2   October, to identify those individuals we would like to depose.
3   They have a short period of time, a week or two, to tell us
4   whether they will represent all of them and will be able to
5   produce them. I assume they will bring them here to New York,
6   consistent with our forum of practice. The parties chose this
7   forum for the litigation. They sued.
8       If we have to chase them in Israel, that's a whole
9   different issue, of course. And then, if they're going to
10  represent all ten of those, let's get them on the calendar so
11  that we could have a rational discussion of when these
12  discussions can in fact occur. There's no point in them taking
13  the position 60 days, 90 days, January 11, if they're not going
14  to be able to produce those witnesses in that time period.
15      THE COURT: I think what makes sense and what I ask
16  the parties to do over the next week is sit down and map out.
17  But right now obviously things have already occurred, and you
18  may be already behind in order to meet a January 2020 schedule,
19  I don't know. So I don't know what the schedule is for the
20  continued rolling production of documents from either side, but
21  I would like the parties to sit down and work out realistically
22  how much time everything is going to take.
23      In other words, from the plaintiff's perspective, let
24  me ask, when do you anticipate concluding document discovery?
25      MR. FRENCHMAN: Your Honor, we've produced the

1  overwhelming number of documents.  The issue is because all the
2  employees who were a party to this agreement are gone now, we
3  have been dealing with backup tapes and whatnot, but we believe
4  that would be completed by the end of the month.
5          And I think what is --
6          THE COURT:  I apologize for interrupting, but having
7  had experience in private practice with backup tapes and the
8  like, what do you mean by "it will be completed?"  In other
9  words, the retrieval from the backup tapes and/or the
10 production from whatever was on the backup tapes?
11         MR. FRENCHMAN:  We expect to be producing our
12 documents by September 30.
13         THE COURT:  And in that connection, have the parties
14 employed a vendor or anything like that?
15         MR. FRENCHMAN:  Yes.  And so that's certainly been
16 happening.  I think there's a little bit of a disconnect about
17 what this case is about.  I understand defendants are trying to
18 blow it up into oh, there's all these witnesses out there, they
19 may have information, we got to do all these depositions.  The
20 contract on its face is crystal clear.
21         And if I may just digress a second, I did get Bell's
22 Palsy a week ago, so I'm not having a stroke, I just have half
23 a frozen face.
24         THE COURT:  That's all right.
25         MR. FRENCHMAN:  But in any event, the real issue here

1  is this is a straightforward contract that they're trying to
2  blow up, excuse the fact that they haven't been paying their
3  royalties clearly and unambiguously due under these contracts,
4  are making claims of reformation without any basis, and
5  frankly, trying to build this case in discovery into something
6  that Powermat cannot financially handle.  That's what is going
7  on here, and it's inappropriate.
8         We are getting these documents out.  We will make
9  witnesses available, to the extent we're able; although how
10 those witnesses can speak to the unambiguous contract is beyond
11 me.  I don't think it's relevant.  And I think this is just a
12 sideshow in order to increase the costs and put pressure on us
13 and excuse the fact that they're paying these royalty fees
14 without any basis.
15        THE COURT:  I guess, at least for me, from my
16 perspective, I don't have enough information one way or the
17 other to decide exactly, for example, whether the ten
18 depositions are necessary or not, and that's what was behind my
19 suggestion of sitting down for a week.  But perhaps it makes
20 sense to allow that production of documents by the end of the
21 month, as I understand it.  I will leave it at that.  I
22 understand that technological things can happen.  I will give
23 the parties a week after that to sit down.  And documents, I
24 understand, have been produced on a rolling basis, so we're
25 talking about the completion of your paper discovery, is that

1   correct?

2   　　　　　　MR. FRENCHMAN:  Correct.

3   　　　　　　THE COURT:  So I would like the parties to take a week
4   or so after that to sit down and map out the witnesses.  There
5   may be witnesses that are beyond anybody's ability to actually
6   control if they're no longer employees of either company.  And
7   if they're out of the country, you can try and use other means,
8   but that obviously would take some time and, I imagine,
9   expense.

10   　　　　　　And then at that point, when there's an idea, we have
11   actual names, you have the understanding of where these folks
12   are, I think at that point, at least for me, the issue would be
13   more crystallized and I would be able to make a decision about
14   we don't need to have -- and frankly -- well, I will be in a
15   better position to be able to make a decision on that issue.

16   　　　　　　MR. FRENCHMAN:  And your Honor, what I would ask -- I
17   think all of that is generally fine, and obviously we can make
18   motions if we need to deal with any discovery disputes
19   regarding overbroad depositions and whatnot.  But I think part
20   of the problem is we should have deadlines in this case that we
21   have to meet, because ultimately that's going to put the
22   pressure on.

23   　　　　　　If there are issues with international witnesses that
24   are crucial to the case, then parties all the time deal with
25   that.  If we can't make it within the deadline, we will come to

1   your Honor apologetically and deal with the situation.  But I
2   see no reason not to at least put the default dates in an order
3   so that the parties are bound by it, and if we can't work out
4   these disputes, we'll be back.
5            THE COURT:  I have no problem with that.  I mean I was
6   suggesting the January default date, and the parties should
7   work around that and fit within that in a case management plan
8   the dates that you think are appropriate.  Obviously I don't
9   need to know every single date, but the plain milestones
10  obviously should be in that.
11           Some of my colleagues, I understand, set a date that's
12  ironclad.  Maybe you have seen some of the docketing and you
13  know that's not the way I practice, in part because I have an
14  understanding that in particular some of the cases I have there
15  aren't firms on both sides, we have solo practitioners, so I
16  understand that sometimes take longer than people anticipate.
17  So let's set the schedule with the idea that standard time for
18  discovery under the rules applies, as well as the number of
19  depositions, and then we'll see where that takes us.
20           But let me just say -- and this goes on both sides --
21  I don't see this as -- well, I guess that with regard to
22  choosing depositions and the like, we should -- and this
23  probably goes without saying -- we should choose carefully,
24  because I haven't been convinced this is a case that's outside
25  the norm of cases that we have in this district.  Sometime

J9DTPOWC

1  things may take a little longer, and I understand, and
2  obviously the fact that witnesses may be in foreign countries
3  and there may be documents that may be hard to retrieve, I get
4  that, and that may take a little longer.
5      But why don't you do that, and we can revisit it, if
6  necessary, with the understanding that while I expect you to
7  meet these dates, I'm not saying that basically you're done at
8  the end of January, because I understand where we are right
9  now, September 13. And hopefully no one is suspicious because
10 it's Friday the 13th. So why don't we do that.
11     The parties in the next week, would you be able to
12 come up with that schedule, or do you think you need a little
13 more time?
14     MR. FRENCHMAN: Yes, your Honor, I think that's fine.
15     MR. FRACKMAN: I'm sure we can. I think the two
16 critical issues are: Will they complete this document
17 production, what will be the form of that production, and who
18 will they be able to make available from the ten or eight,
19 whatever number of depositions, we then indicate we're going to
20 want and need to take? It's not that complicated.
21     I am with you, your Honor, but I don't think it's
22 likely that they will be able to produce all of those witnesses
23 for us to complete discovery before Christmas. So we're into
24 January.
25     THE COURT: We can cross that bridge when we come to

1    it.
2            So I will expect the parties to provide me with a
3    revised case management plan and scheduling order by the 20th,
4    so a week from today.  And then I will add in any additional
5    date for post-discovery conference and the like, although I can
6    tell you that I was planning on having a post-discovery
7    conference on January 23rd at 11:00 a.m.  Again, after you meet
8    over the week, some of these dates may change, but that's what
9    I was planning.
10           Is there anything else that we need to deal with today
11   from the plaintiff's perspective?
12           MR. FRENCHMAN:  No, your Honor.
13           THE COURT:  From the defense?
14           MR. FRACKMAN:  No, your Honor.  I think it goes
15   without saying we don't agree with our colleague's
16   characterization of the issues in the case.
17           THE COURT:  Understood.  And obviously the parties'
18   relative positions are set forth in your initial letter, and I
19   didn't at all assume that you were.
20           Thank you very much, we'll stand adjourned.
21           MR. FRENCHMAN:  Thank you.
22           (Adjourned)
23
24
25