JC37POWC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    POWERMAT TECHNOLOGIES, LTD.,

4                    Plaintiff,

5            v.                              19 Civ. 878 (VSB)

6    BELKIN INTENATIONAL, INC.

7                    Defendant.

8    ------------------------------x
                                          New York, N.Y.
9                                         December 3, 2019
                                          11:00 a.m.
10
     Before:
11
                        HON. VERNON S. BRODERICK
12
                                          District Judge
13
                            APPEARANCES
14
     MCKOOL SMITH P.C.
15        Attorney for Plaintiff
     BY:  NICHOLAS MATHEWS
16        (via telephone)

17   O'MELVENY & MYERS LLP
          Attorneys for Defendant
18   BY:  MATTHEW KLINE
          (via telphone)
19

20

21

22

23

24

25

1          (Telephone conference in chambers)

2          MR. KLINE:  Matt Kline here for Belkin.

3          MR. MATHEWS:  This is Nick Mathews representing

4    Powermat.  Also with me is Charles Fowler.

5          THE COURT:  This is Judge Broderick.  We're in my

6    chambers.  We have a court reporter here, so what I'd ask is if

7    the parties could please identify themselves before you do

8    speak so that we can have an accurate record of what has

9    transpired.

10          So we're here in connection with a discovery dispute.

11   I have the parties' submission that was filed on November 22,

12   as well as the revised joint proposed case management plan and

13   scheduling order and a copy of the motions that have been

14   filed.  Anything else I should have in connection with today's

15   conference?  From the plaintiff's perspective?

16          MR. MATHEWS:  Nick Mathews for Powermat.  Not from our

17   perspective, your Honor.

18          MR. KLINE:  Matt Kline, O'Melveny, your Honor.

19   Nothing more.

20          THE COURT:  OK.  So let me ask, what is the current

21   status of the dispute?  As I understand it, there are basically

22   two I guess categories of documents.  The one related to sales

23   data that the plaintiff requested from defendant.  The other

24   related to the defendants seeking production of plaintiff's

25   third-party license material and internal analysis of its

JC37POWC

1   patents.  So, is there another item that I'm missing, or are

2   those the two items that are in dispute from the plaintiff's

3   perspective?

4           MR. MATHEWS:  Your Honor, Nick Mathews for Powermat.

5   Those are the two items, although with respect to item two,

6   which is Belkin's requests for licenses, I can confirm those

7   have been produced.

8           MR. KLINE:  And, your Honor, on the licenses, we've

9   gotten those but we have not gotten the related correspondence,

10  and some of those licenses are incredibly important, because

11  one of them seems to have the exact same mistake issue that

12  we're litigating in our case, and so that one actually led to a

13  settlement agreement with the technology company Samsung.  What

14  we have is the agreement but we don't have any of the

15  underlying correspondence, any of the back-and-forth, any of

16  the internal discussion of that that would obviously shed light

17  on our case too.  So, we're hoping to get all that.  We are in

18  the middle of deposing their CEO right now, your Honor, on a

19  break from the deposition.  We have depositions tomorrow at 2.

20  I am hoping we can get those underlying documents so that we

21  can complete the depositions, but right now I'd say we have

22  half of what we need but not all of it.

23          THE COURT:  OK.  And let me ask from plaintiff's

24  perspective, are those documents -- and again I'm not saying

25  everything -- but with regard to the category of documents that

JC37POWC

1    defense counsel was speaking of, in other words, the

2    back-and-forth or the related documents, are those documents

3    that -- and again without getting into specific details about

4    specific actual document requests -- as a general matter, is

5    that something that you were in the process of producing?

6           MR. MATHEWS:  Nick Mathews for Powermat.  The answer,

7    your Honor, is no.  That is not a request that was really

8    discussed between the parties.  Our understanding of the

9    request was that it was limited to licenses, which we have

10   cleared and produced.  This request for negotiation docs is

11   somewhat new to me, and so that's where we stand now from

12   Powermat's perspective.

13          MR. KLINE:  Your Honor, may I respond to that?

14          THE COURT:  You may.

15          MR. KLINE:  Mr. Elias who is my colleague here in the

16   New York office assures me that those related correspondence

17   were discussed.  I know that Mr. Mathews nor I were on those

18   telephone calls, so I don't want to suggest that he was or I

19   was, but my clear understanding was those related

20   correspondence were part of the discussions.  And if there is a

21   disconnect on that because of Mr. Mathews and I not being on

22   the telephone call, I can assure you that we have been seeking

23   those related materials.

24          THE COURT:  Well, why don't we do this for the time

25   being.  Let's put that issue to the side for the moment.  And I

JC37POWC

1    will ask the parties to meet and confer about that to determine

2    whether there is agreement with regard to those documents and,

3    if not, where the disagreement is and whether or not you

4    believe that my intervention is going to be necessary.

5            With regard to the -- what's the status with regard to

6    the sales information?  As I understand it, it's not that

7    the -- let me ask that.  What's the status of the sales

8    information?  I understand there has been agreement to produce

9    it if in fact the motion comes out a particular way, but let me

10   hear the status with regard to those documents.

11           MR. MATHEWS:  Nick Mathews again for Powermat.  Your

12   Honor, we still do not have any of the sales data for any

13   period of time during the five year period.

14           THE COURT:  OK.  Let me hear from Belkin on this.

15           MR. KLINE:  Yes, your Honor.  So, as you noted, there

16   is this threshold limitation of liability motion that's

17   pending.  Whenever you rule on that, that's fine.  The concern

18   has been raised that if a ruling does not come out before the

19   end of the discovery cut-off period, they would not have a

20   chance to get the documents, examine witnesses on it.  I think

21   we have mooted that problem by saying that of course we would

22   provide the documents in light of your ruling if it came out

23   that way, and of course we would provide a deponent.

24           What we are concerned with now is what we really think

25   is an improper fishing expedition at this stage, particularly

JC37POWC

1   given that from our perspective what the plaintiff is doing in

2   this case, as in the Samsung case, it seems to be going around

3   the industry asserting cases like these and trying to extract

4   tons of money from folks, and we don't think at this stage it's

5   appropriate to provide the sensitive commercial information.

6          I have no doubt that Mr. Mathews would keep that

7   information in confidence under the appropriate protective

8   order, but we just don't think it's appropriate to give that

9   discovery over now, given that we've given them every

10  accommodation in the future that if your ruling came out on the

11  limited liability against us -- and we don't think it should

12  under pretty clear New York law -- that we would, A, get them

13  the documents and, B, get them their deposition.  Or if they

14  wanted multiple depositions, we could talk about that too, but,

15  as we noted, we think it's a fairly simple math calculation

16  that their damages person would have to do.

17         THE COURT:  Let me put a finer point on that issue.  I

18  would have no problem extending -- in other words, if the

19  concern is -- and I think is the discovery cut-off in January;

20  is that correct?

21         MR. MATHEWS:  Yes, January 15.

22         THE COURT:  So I would not have a problem extending

23  that if the parties need sort of belt and suspenders.

24  Obviously I'm not in any way saying -- well, I would do that,

25  but let me ask, is the material something that is needed -- in

JC37POWC

| | |
|---|---|
| 1 | other words, assuming that the deadline is extended and/or more |
| 2 | generally that the materials will be -- that there won't be |
| 3 | basically someone coming in and saying it's too late because |
| 4 | the discovery deadline has lapsed, I can tell you that that |
| 5 | argument would not -- that does not sound like where we are. |
| 6 | But let me ask, is there a need right now for those documents? |
| 7 | MR. MATHEWS:  Your Honor, Nick Mathews for Powermat. |
| 8 | Yes, there is a very strong need for the documents now.  This |
| 9 | is not a fishing expedition.  There is a contract that covers |
| 10 | wireless charging products; it has a five year term.  We are |
| 11 | simply requesting the financials related to that five year |
| 12 | term.  We obviously disagree on the limitation of liability. |
| 13 | There are competing cross motions on that.  But the point is |
| 14 | this:  Discovery closes January 13.  Opening reports are due |
| 15 | February 5.  And this is a case that we intend to see through |
| 16 | to trial.  The delay is something that I think Belkin may be |
| 17 | pursuing here, and from our perspective this is very simple |
| 18 | data to collect and produce AEO, and we would like to maintain |
| 19 | the current schedule, and with a January 13 close of discovery |
| 20 | and a February 5 expert report date, we think the time is now |
| 21 | to get this produced. |
| 22 | THE COURT:  OK.  All right. |
| 23 | MR. KLINE:  If I may respond, your Honor.  Two things. |
| 24 | One, we would never make the argument that if the discovery |
| 25 | cut-off passed they wouldn't get the documents.  We agree we |

JC37POWC

1   aren't going to make that argument.  But, two, the January 13

2   cut-off you had said at the last hearing that Mr. Frackman my

3   partner appeared at that was flexible.  We're going to need to

4   move that date a little bit anyways, and not because of delay

5   but because we're doing basic discovery.  We still don't have

6   these related correspondence from their people.  There are

7   third-party witnesses that we need to go depose.  I just have

8   been examining their 30(b)(6) witness on the contract

9   negotiations, and he has literally zero personal knowledge of

10  anything that happened during the negotiations.  So, we need to

11  go depose, for example, the woman Kelly Birmingham, who is a

12  fellow employee of theirs who is going to have to talk about

13  what the negotiations were.  We had noticed her deposition

14  before the discovery cut-off, but she is a third-party witness

15  in California, and I think we're going to have a little bit of

16  difficulty getting to her.

17          We also just heard that there is an Israeli law firm

18  that was somehow involved in negotiations.  We may have to look

19  into examining them.  There are former employees in Israel.  We

20  are exercising all sorts of diligence here.  We're taking these

21  three depositions in two days at their insistence in New York.

22  They said these are the only three days we could get three of

23  their top people.  We are all working very hard here, but the

24  discovery cut-off is going to have to move.

25          In terms of these royalty numbers, you know, we

JC37POWC

1    disagree.  We think we have provided them information

2    concerning the first view that is not covered by the limitation

3    of liability period -- sorry -- provision.  And to the extent

4    your Honor were to rule against us on that, we would provide

5    those documents immediately, and we would provide deponents

6    immediately to answer questions about them.

7            We don't think that that's going to have to happen

8    given the way New York law reads unlimited liability

9    provisions, but that's our basic position on that.

10           THE COURT:  OK.  I'm going to extend the deadline.

11   The question is how much additional time are you going to

12   request based upon the need for the discovery, putting aside

13   for the moment the issue relating to the documents that are in

14   dispute, just to get the discovery done that you already got in

15   the pipeline.

16           So, I would ask the parties to meet and confer with

17   regard to that.  Obviously, you can build into that the issue

18   relating to the sales data that is in dispute, but we will just

19   extend the deadline.  I understand the desire to move the case

20   forward, and I am going to do my best to make sure that

21   happens, but I do think an extension is warranted here.

22           And, as I mentioned -- let me just make sure I have a

23   correct understanding of this.  Without saying one way or the

24   other where the motion would come out, am I correct that the

25   decision on the motion would resolve the issue one way or the

JC37POWC

1    other?  Either documents would need to be produced, or there

2    would be a limitation of liability pursuant to the contract

3    provision?  I'm not in any way saying one way or the other.

4    I'm just saying that, in other words, while I understand the

5    need for the documents, would there be a need for the documents

6    if I ruled that there is a limitation period, in other words, a

7    limitation of liability?

8            MR. MATHEWS:  Your Honor, Nick Mathews for Powermat.

9    I think the answer is if you do rule against us, that there

10   would not be a need for the documents.  But obviously we have

11   our own cross motion pending.  I think that's the answer.

12           THE COURT:  Understood.  What I'm really trying to get

13   at is there any prejudice here to -- other than the issue of

14   time and understanding that you want to move the case

15   forward -- is there any issue of prejudice by extending the

16   deadline, A, to ensure that the discovery that the parties are

17   currently engaged in gets done and, B, to allow for the motion

18   to be decided and then the production of the materials if

19   needed, or not?  And it doesn't sound as if there is other than

20   the passage of time.  Is that an accurate statement?

21           MR. MATHEWS:  Nick Mathews for Powermat.  Yes, it is.

22           THE COURT:  And for Belkin?

23           MR. KLINE:  I think that's fairly summarized by

24   Mr. Mathews, your Honor.

25           THE COURT:  So what I would ask the parties to do is

JC37POWC

1  to meet and confer about that.  I hadn't realized that you were

2  in the middle of a deposition.  So, you know, I would ask

3  you -- obviously you can go back to that and then provide me

4  with a revised case management plan and scheduling order.  By

5  the end of the week, would that be something the parties would

6  be able to do?

7          MR. KLINE:  Mr. Kline here.  That would work on our

8  end.

9          MR. MATHEWS:  Same for Powermat.

10          THE COURT:  And obviously if there is a dispute, you

11  can send me a short letter with the differing positions of the

12  parties.  We will get on the phone and I will resolve any

13  dispute at that point.  OK?

14          MR. MATHEWS:  Thank you.

15          MR. KLINE:  Thank you.

16          THE COURT:  Thank you very much for getting on the

17  phone.

18          MR. MATHEWS:  Thank you so much.

19          (Adjourned)

20

21

22

23

24

25