```
K1E5powC                         phone conference
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

POWERMAT TECHNOLOGIES, LTD.,

             Plaintiff,              New York, N.Y.

        v.                           19 Civ. 878 (VSB)

BELKIN INTERNATIONAL INC.,

             Defendant.

------------------------------x
                                     January 14, 2020
                                     4:30 p.m.
Before:

              HON. VERNON S. BRODERICK,

                                     District Judge


                      APPEARANCES

MCKOOL SMITH, P.C.
     Attorneys for Plaintiff
BY:  NICHOLAS M. MATHEWS


O'MELVENY & MEYERS, LLP
     Attorneys for Defendant
BY:  BRAD M. ELIAS
BY:  MATTHEW KLINE
```

1           (Case called)
2           THE COURT:  This is Judge Broderick.  If you could
3   repeat that?  You cut out there.
4           MR. MATHEWS:  Yes.  This is Nick Mathews from McKool
5   Smith representing Powermat.  Hopefully you can hear me okay,
6   your Honor.
7           THE COURT:  Yes.  Was there somebody else also with
8   you?
9           MR. KLINE:  It's Matt Kline from O'Melveny for Belkin,
10  your Honor, but I'm having a hard time hearing everyone.  I
11  hope you can hear me okay.
12          THE COURT:  I can hear you.  So, right now we have
13  Mr. Kline, Mr. Mathews.  Is there anybody else on the line?
14          MR. ELIAS:  Yes, your Honor.  Brad Elias also from
15  O'Melveny for Belkin as well.
16          THE COURT:  Thank you.
17          So, we are here today for discovery dispute.  I just
18  ask that when counsel does speak if you could please identify
19  yourself for the record.  We are in my chambers, we have a
20  court reporter here, so I just want to make sure that we have
21  an accurate record.
22          So, I have the following documents in connection with
23  today's conference.  I have the order setting the revised
24  discovery schedule which was document 77 from ECF.  I have the
25  parties' joint letter submitted on January 3rd.  And then I

1   have the redacted letter that was also submitted by the

2   parties, was filed on ECF and docketed as document 79.

3             Are there any other materials that I should have in

4   connection with today's conference?  First I will hear from

5   plaintiff's counsel.

6             MR. MATHEWS:  Nick Mathews for Powermat.  Not from our

7   perspective, your Honor.

8             THE COURT:  Okay.

9             From the defendant's perspective?

10            MR. KLINE:  Matt Kline, your Honor.  Those are the

11  right documents.  Thank you.

12            THE COURT:  So, the first item would I like to discuss

13  is the issue of the 30(b)(6) deposition and I guess my question

14  is the following.  I don't believe that I have -- either

15  party -- any of the specific questions that the 30(b)(6)

16  deponent was unable to answer.  Is that an accurate statement?

17            First I will hear from Mr. Mathews.

18            MR. MATHEWS:  Yes, your Honor.

19            So, the 30(b)(6) witness is the Chief Financial

20  Officer of Powermat.

21            THE COURT:  Yes.

22            MR. MATHEWS:  And so he did answer a number of

23  questions related to the solvency of the company during the

24  relevant time period which was the issue that was in question

25  at the time.  And so, from our perspective, he was able to

1  answer those questions during the deposition.  Now, there are
2  other aspects of the deposition where Belkin has said they wish
3  they had some more information but I don't think that the
4  conclusion regarding solvency was one of those issues.
5          THE COURT:  Let me hear from either Mr. Kline or
6  Mr. Elias with regard to that.
7          MR. KLINE:  Sure, your Honor.  Mr. Elias took the
8  deposition so I am going to say something briefly and then if
9  Mr. Elias wants to augment it I advise him to do so.  And, I
10 apologize, he is in the New York office and I am in Los Angeles
11 so we can't be perfectly coordinated.
12         I think the main issue, your Honor, was we wanted the
13 audited financials to be able to test some of the claims their
14 CFO is making and when we were pressing him on some of the
15 details he consistently referred to, well, there would be
16 documents that say that.  I can't provide you that information.
17 And then, when Mr. Elias pressed him on some of the issues he
18 said, you know, I just really didn't spend time reviewing
19 documents.  I think he said something like he spent three
20 minutes on it preparing for some of the questions.
21         If Mr. Elias wants to augment that, with your
22 indulgence, your Honor, I invite minimum to do so.
23         THE COURT:  Sure.
24         Go ahead, Mr. Elias.
25         MR. ELIAS:  Thank you, your Honor.

1          There were two primary parts to the 30(b)(6) topic.
2   Part of it was the solvency issue that you heard Mr. Mathews
3   address, and the second half of it was Powermat's financial
4   condition generally during this 2015 to 2017 time period that's
5   at issue.  We are not disputing that we were able to get
6   information about the solvency question.  Mr. Mathews is
7   correct that the witness did answer those questions and
8   provided that information.  The problem we have is that he
9   wasn't able to answer the most basic questions about the
10  company's financial condition.  Some of the examples are we
11  asked him whether the company had positive EBITDA; he did not
12  know.  We asked him about the company's revenues; he did not
13  know.  We asked him about the amount of time he had spent
14  preparing to answer those questions and his response was that
15  he had spent three minutes.
16          So, really what this is about is not the
17  solvency-related testimony, it is that we would like to get the
18  financial statements and then we would like to have an
19  opportunity to question him as a 30(b)(6) witness about those
20  statements.
21          THE COURT:  Okay.  Let me ask this.  When you say the
22  financial statements, over what time period are you talking
23  about?  What time period are you talking about?
24          MR. ELIAS:  We have asked for the audited financial
25  statements for 2015, 2016, 2017.

1                THE COURT:  Okay.  Well, let me ask the follow-up

2      question.  I think, again, I think I actually have to see the

3      specific questions that the witness was unable to answer in

4      order to make an informed ruling with regard to this issue, as

5      well as, and I may already have this, but as well as the notice

6      of deposition that has the 30(b)(6) topics, and I think that

7      would assist me in actually making an ultimate ruling.

8                So, I would ask that the parties provide that to me.

9      To the extent that you believe that I should also, it probably

10     makes sense to provide me with the relevant pages of the

11     deposition so I can see exactly what the responses were related

12     to that so that I can more appropriately actually respond, make

13     a ruling on the 30(b)(6) issue.

14               MR. KLINE:  This is Mr. Kline.

15               That makes sense and we appreciate that and we will

16     get you that this week, your Honor, and we will make sure to

17     run it by Mr. Mathews before we send it in.

18               THE COURT:  That would be perfect.  And obviously, to

19     the extent that you can agree on materials or agree to disagree

20     on certain materials, that's fine.  But I would appreciate

21     that.  It would just assist me in making that ruling.

22               So, as I understand it, with regard to the, there are

23     I think two basic other issues, I believe, one is relating to

24     the documents -- hold on for two seconds -- documents relating

25     to license disputes with other third-parties.  As I understand

1    it, certain documents have been turned over, specifically when
2    the plaintiff's negotiations resulted in a license, my
3    understanding is that the license was produced and that the
4    surrounding documents -- only the license was produced but not
5    the surrounding documents.
6              Is that an accurate statement?
7              MR. MATHEWS:  Nick Mathews for Powermat.  Your Honor,
8    that is a correct statement.
9              THE COURT:  As well as I understand it, the argument
10   with regard to the financial condition, the argument was that
11   they would be irrelevant to the issue of a contract claim.
12             Is that also accurate?
13             MR. MATHEWS:  Yes, your Honor.  That is correct.
14             And that was Nick Mathews for Powermat.
15             THE COURT:  Thank you.
16             So, let me hear briefly from defense counsel with
17   regard to each of those issues.
18             MR. KLINE:  Yes, your Honor.  This is Mr. Kline for
19   Belkin.
20             The disputes with third-parties on the license
21   agreements is really important.  I think that for a moment
22   Powermat was taking the position in the case that they had one
23   standard agreement with these different licensees.  I think
24   discovery and the deposition of their CEO and their other
25   witnesses has shown that they really didn't have one standard

1   agreement.  The agreement changed across different licenses

2   that they had set up and not only was there no standard

3   agreement, there were a number of disputes about the terms of

4   those license agreements.  And so, for example, we know that

5   one dispute resulted in a settlement agreement with Samsung

6   that we would like to get our hands on as well as the documents

7   back and forth where the parties kind of took different

8   positions about how to read the contract.

9           I think most important among these other licensees is

10  a company called IDT, your Honor, that we have established that

11  in the parties' back and forth there is a deposition exhibit

12  that we can get to you and some related deposition testimony if

13  it was helpful where Powermat said to Belkin, hey, we are

14  having a hard time finalizing our deal between Powermat and

15  Belkin.  If you want to, you guys can just rely on the IDT

16  license -- you being Belkin -- you can rely on the Powermat IDT

17  license.

18          As it turns out the Powermat IDT license has exactly

19  the contractual language that we think should be the

20  appropriate language in this case, it does not contain the few

21  words of mistake that we believe are contained in our contract

22  and we want to get the back and forth around that.  And why

23  that is so important is that their CEO admitted in his

24  deposition with us that, yes, there were mistakes in the

25  document.  He did not, to be clear, your Honor, admit that the

1  mistake that we claim in the case is present but he admits
2  there is other mistakes like every page of the contract has the
3  number 5 at the bottom of it or there is red lining and other
4  strange headers and footers in the document.
5           We want to be able to show, through the back and forth
6  that Powermat had with IDT, Samsung, and a couple of other
7  parties, that our interpretation is a completely reasonable
8  one, as is our mistake defense.
9           I think that there has been a little bit of ships
10 passing in the night in some of the briefing with this.  We
11 don't want their communications with any licensee ever about a
12 possible license.  We really just want the kind of related
13 communications for folks where they reached a license agreement
14 and there was a dispute about the terms of that license
15 agreement because we think that those are really germane,
16 relevant documents to the issues in the case, and based on the
17 deposition admissions we got we don't think that there is any
18 significant burden in gathering these documents because, as the
19 CEO described it, yes, there are letters and e-mails back and
20 forth but we are not talking about mountains of evidence, just
21 a small amount.
22          So, that's the one item, your Honor.  I think on the
23 relevance of the financial documents, I think we have
24 identified a couple and I think that, you know, the parties
25 have briefed that issue.  One has to do with their bad or good

1    faith in the way they've approached the contract.  They cite a
2    North Carolina case that says that is not really relevant, we
3    have cited some Second Circuit cases that we say we think it is
4    relevant.  There is the issue of -- the potential issue, we
5    haven't really pushed it hard in the case yet, about whether
6    they were solvent.  And the CEO did admit during the deposition
7    that they were missing their debts as they were coming due but
8    it is an issue that's not fully explored on our end.  And I
9    just think under the general relevance standards, if this case
10   were ever to go to a jury, we would want to show the general
11   financial condition of the company and why it was that after
12   many months of not coming after us for payments on this
13   chi-only standard, they really kind of, with the new CEO place
14   and the new economic pressures in the company, did pursue this
15   new strategy.

16         None of that is to prejudge any of those issues, your
17   Honor.  You will hear very forcefully from Mr. Mathews that he
18   disagrees with those case themes and theories, but I think Rule
19   26 says this isn't the time to decide the merits of those
20   issues but if there is a plausible theory of relevance we
21   should get those documents.

22         In terms of any burdensomeness objection on the
23   financial documents, we think there is not really a good one
24   there because their CFO admitted, yes, they keep audited
25   financial records and those would be pretty easy to gather and

1    produce to us.

2             THE COURT:  Okay.

3             MR. KLINE:  So, I hope I addressed the two categories
4    of documents, your Honor.

5             THE COURT:  You did.  Let me hear from plaintiff's
6    counsel with regard to these two issues, if you have anything
7    additional to add to the letters.

8             Go ahead.

9             MR. MATHEWS:  Yes, I do, your Honor.  Nick Mathews for
10   Powermat.  And if I could take 30 seconds to kind of give an
11   overview of how we got here in terms of this discovery dispute
12   and what else we have already done to produce relevant
13   materials?

14            From our perspective, this is a clear license, there
15   is an integration clause, no parole evidence is relevant, but
16   we have been willing to move things along to trial and we have
17   spent tens of thousands of dollars gathering documents at
18   Belkin's request.  This includes all the correspondence to and
19   from Powermat and Belkin.  Before the contract was negotiated
20   and afterward, internal correspondence within Powermat
21   regarding the negotiation and performance of the license,
22   patent claim charts internal that we keep showing that we have
23   patents covering the standard, and the most recent request we
24   got from Belkin is, well, now we need all of your third-party
25   licenses even though we are looking at the intent of the

1    parties in this contract and we agreed to that request too and
2    we produced those.
3              So, this next request for correspondence and back and
4    forth relating to these third-party contracts, we think, is
5    many steps removed from what is relevant in the case and it is
6    something that is significantly driving up our costs in terms
7    of discovery and we don't think it is proportional to the needs
8    of the case.
9              THE COURT:  Okay.  So, with regard to the first issue,
10   which as I understand it -- well, as I understand it, it is the
11   issue of licenses that had already been reached and then if
12   there was a dispute with regard to those licenses.
13             I agree that under Rule 26 and the definition of
14   relevance as it stands with regard to discovery, that there is
15   a theory under which those materials would be relevant.
16   Similarly, I find that with regard to the financial
17   documents -- again I am not, to be clear, I am not, by making
18   these rulings at all, A, indicating that the documents will
19   ultimately be relevant; or B, that even if I find that there is
20   some relevancy that the documents necessarily could even be
21   admissible.  I am purely making a ruling that at this stage
22   they're discoverable.
23             So, with regard to the financial documents -- and
24   again, I don't know.  I, too, think that those are relevant and
25   it may be that, as I indicated in the order, that in the

1  resolution of the legal issues that are currently before me
2  that some of these documents may fall out.  In other words,
3  while I understand that there is expense to the plaintiff to
4  produce these and I understand that -- but it may be that when
5  I do make the legal rulings that some of these will no longer
6  prove to be relevant.  And I am not in any way sort of
7  pre-staging or giving you any idea about one way or the other
8  where I intend to come out but I am just indicating that I
9  understand the issues.
10            If, at the end of the day, once these documents were
11  produced, if there is a sense that plaintiff feels that these,
12  it was improper and/or that on the basis of proportionality
13  that there is an argument to be made that the defense should
14  bear some of the costs or related to these documents, I will
15  hear you at that time but at this stage I find that they are
16  sufficiently relevant under Rule 26 to necessitate their
17  production, again with the limitation, as I understand it, with
18  regard to when it comes to the licensing issue the only
19  documents that are being sought and that I am ruling on are the
20  documents as they relate to licenses that were entered into
21  where there had been a subsequent, I guess, dispute with regard
22  to those licenses and the back and forth that occurred related
23  to that.
24            And then, with regard to the 30(b)(6) issue, I am
25  going to reserve decision on that until I receive the materials

1   from the parties relating to that.

2              Is there anything either that the parties don't

3   understand or things that you would seek clarification on at

4   this stage with regard to my ruling?  From the plaintiff?

5              MR. MATHEWS:  Not from Powermat.  Nick Mathews for

6   Powermat.  Nothing unclear from our perspective.  Thank you

7   very much.

8              THE COURT:  All right.

9              MR. KLINE:  And Matt Kline for Belkin, your Honor;

10  same.  We understand your ruling and we appreciate it and we

11  will work together with Mr. Mathews moving forward.

12             THE COURT:  Okay.  All right.  Thank you very much,

13  counsel, for getting on the phone and I look forward to getting

14  the materials related to the 30(b)(6) issue.  Assuming I don't

15  have any additional questions, what will follow from that once

16  I receive the materials is a ruling from me on that particular

17  issues.  If I do have questions, I will issue an order asking

18  that we jump on the phone, I will try and issue in that order,

19  have other questions that I have so that the parties can be

20  prepared to respond to it and then we will resolve that issue

21  as expeditiously as possible so the parties can move forward.

22  Okay?

23             MR. KLINE:  Matt Kline, your Honor.  Thank you.  And I

24  know Mr. Mathews and I both appreciate your willingness to jump

25  on the phone and have these calls.

K1E5powC                        phone conference

1       THE COURT:  Sure.
2       MR. KLINE:  Not every judge in the country does this
3  so we appreciate your time.
4       THE COURT:  It is not a problem.  Is there anything
5  else that we need to deal with today?  From the plaintiff?
6       MR. MATHEWS:  Nick Mathews for Powermat.  No, your
7  Honor, and thank you for your time.
8       THE COURT:  From the defense?
9       MR. KLINE:  No, your Honor, have a good day.  Thank
10  you very much.
11       THE COURT:  Thank you very much.  We will stand
12  adjourned.
13                              o0o